# Exhibit A

# SUMMONS - CIVIL

JD-CV-1 Rev. 9-14
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

See other side for instructions

TO: Any proper officer: BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
☐ "X" if claiming other relief in addition to or in lieu of money or damages.

| Address of court clerk where writ and other papers shall be filed (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| 300 Grand Street, Waterbury, CT 06702 | (860) 591-3300 | March 17, 2015 |

| ☒ Judicial District  ☐ Housing Session | G.A. Number: | At (Town in which writ is returnable) Waterbury | Case type code (See list on page 2) Major: C  Minor: 20 |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented | Juris number |
|---|---|
| Shipman & Goodwin LLP, 1 Constitution Plaza, Hartford, CT 06103 | 057385 |

| Telephone number | Signature of Plaintiff (If self-represented) |
|---|---|
| (860) 251-5000 | |

The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book.  ☒ Yes  ☐ No

Email address for delivery of papers under Section 10-13 (if agreed to): mostrowski@goodwin.com

Number of Plaintiffs: 1     Number of Defendants: 2     ☐ Form JD-CV-2 attached for additional parties

| Parties | Name (Last, First, Middle Initial) and Address of Each party | |
|---|---|---|
| First Plaintiff | Name: Webster Bank, N.A.  Address: 145 Bank Street, Waterbury, CT 06702 | P-01 |
| Additional Plaintiff | Name:  Address: | P-02 |
| First Defendant | Name: Travelers Casualty and Surety Company of America  Address: One Tower Square, Hartford, CT 06183 | D-01 |
| Additional Defendant | Name: St. Paul Mercury Insurance Company  Address: One Tower Square, Hartford, CT 06183 | D-02 |
| Additional Defendant | Name:  Address: | D-03 |
| Additional Defendant | Name:  Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed (Sign and "X" proper box) | ☒ Commissioner of the Superior Court  ☐ Assistant Clerk | Name of Person Signing at Left  Mark K. Ostrowski, Esq. | Date signed  02/18/2015 |

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

For Court Use Only — File Date

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date |

Name and address of person recognized to prosecute in the amount of $250
Maria Drag, 168 Rimfield Drive, South Windsor, CT 06074

| Signed (Official taking recognizance; "X" proper box) | ☒ Commissioner of the Superior Court  ☐ Assistant Clerk | Date  02/18/2015 | Docket Number |

STATE OF CONNECTICUT }
                              } SS: HARTFORD,      FEBRUARY 18, 2015
COUNTY OF HARTFORD   }

        Then and by virtue hereof on the 18th day of February, 2015, I made due and legal service on the within named Defendant, **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** by leaving a verified true and attested copy of the original **Writ, Summons, Complaint and Statement Of Amount In Demand,** with and in the hands of Jennifer L. Abramo, Paralegal, Legal Department, who is duly authorized to accept service for the within named Defendant at, One Tower Square, in the City of Hartford.

        Also on the 18th day of February, 2015, I made due and legal service on the within named Defendant, **ST. PAUL MERCURY INSURANCE COMPANY,** by leaving a verified true and attested copy of the original **Writ, Summons, Complaint and Statement Of Amount In Demand,** with and in the hands of Jennifer L. Abramo, Paralegal, Legal Department, who is duly authorized to accept service for the within named Defendant at, One Tower Square, in the City of Hartford.

        The within is the original, **Writ, Summons, Complaint and Statement Of Amount In Demand,** with my doings hereon endorsed.

FEES:

| | |
|---|---|
| Pages | $ 26.00 |
| Endorsements | 2.80 |
| Service | 60.00 |
| Travel | 2.00 |
| Total | $ 90.80 |

ATTEST:

_____
CHARLES J. LILLEY
STATE MARSHAL
HARTFORD COUNTY

| | |
|---|---|
| RETURN DATE: MARCH 17, 2015 | SUPERIOR COURT |
| WEBSTER BANK, N.A. | JUDICIAL DISTRICT OF WATERBURY |
| v. | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; ST. PAUL MERCURY INSURANCE COMPANY | FEBRUARY 18, 2015 |

## COMPLAINT

Plaintiff Webster Bank, N.A. ("Webster") hereby files this complaint against Travelers Casualty and Surety Company of America ("Travelers") and St. Paul Mercury Insurance Company ("St. Paul") (collectively, the "Insurers") and alleges as follows:

### Introduction

1. This is an insurance coverage dispute involving financial institution bonds issued by the Insurers to Webster.

2. The bonds were intended to protect Webster from loss resulting from forgery or alteration of, among other things, any negotiable instrument, written receipt for the withdrawal of property and/or evidence of debt.

3. Oxford Collection Agency, Inc., d/b/a Oxford Management Services ("Oxford") was a customer of Webster's and through the use of altered documents it defrauded Webster of approximately Six Million Dollars ($6,000,000).

4. Despite proper notice and demand, the Insurers have refused to indemnify Webster for the loss it has sustained.

5. The Insurers' refusal to indemnify Webster is a breach of the bonds for which Webster has suffered injuries.

### The Parties

6. Plaintiff Webster is a national association organized and existing under the laws of the United States of America with its principal place of business in Waterbury, Connecticut. At all times relevant to this action, Webster regularly conducted business in Connecticut.

7. Webster is a wholly owned subsidiary of Webster Financial Corporation ("Webster Financial") which is a Delaware corporation with its principal place of business in Waterbury, Connecticut.

8. Defendant Travelers is a stock insurance company organized and existing under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.

SHIPMAN & GOODWIN LLP® • COUNSELORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103-1919 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

9. On information and belief, the Defendant St. Paul is a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business in St. Paul, Minnesota, but registered and doing business in the State of Connecticut.

## Factual Background

### The Financial Institution Bonds Issued by the Insurers to Webster

10. St. Paul Mercury Insurance Company ("St. Paul") issued Financial Institution Bond No. 469BD1929 to Webster Financial for policy period December 31, 2008 through December 31, 2009 (the "2008 Bond").

11. As a wholly owned subsidiary of Webster Financial, Webster was an insured under the 2008 Bond.

12. St. Paul Mercury Insurance Company ("St. Paul") issued Financial Institution Bond No. 469BD1979 to Webster Financial for policy period December 31, 2009 through December 31, 2010 (the "2009 Bond").

13. As a wholly owned subsidiary of Webster Financial, Webster was an insured under the 2009 Bond.

14. St. Paul Mercury Insurance Company ("St. Paul") issued Financial Institution Bond No. 469BD2006 to Webster Financial for policy period December 31, 2010 through December 31, 2011 (the "2010 Bond").

3

15. As a wholly owned subsidiary of Webster Financial, Webster was an insured under the 2010 Bond.

16. St. Paul Mercury Insurance Company ("St. Paul") issued Financial Institution Bond No. 469BD2028 to Webster Financial for policy period December 31, 2011 through December 31, 2012 (the "2011 Bond").

17. As a wholly owned subsidiary of Webster Financial, Webster was an insured under the 2011 Bond.

18. Travelers Casualty and Surety Company of America ("Travelers") issued Financial Institution Bond No. 105877157 to Webster Financial for policy period December 31, 2012 through December 31, 2013 (the "2012 Bond").

19. As a wholly owned subsidiary of Webster Financial, Webster was an insured under the 2012 Bond.

20. Pursuant to Insuring Agreements D and E of the 2008 Bond, 2009 Bond, 2010 Bond, 2011 Bond and 2012 Bond (collectively the "Bonds") and subject to the Bonds' other terms and conditions, St. Paul and Travelers agreed to indemnify Webster in an amount up to Twenty-five Million Dollars ($25,000,000) for, among other things, loss resulting directly from certain forged or altered documents.

21. In particular, Insuring Agreement D of each bond provides Webster with substantially similar coverage for loss resulting directly from:

4

SHIPMAN & GOODWIN LLP • COUNSELORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103-1919 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

Forgery or alteration of, on, or in, any Negotiable Instrument (except an Evidence of Debt or Substitute Check), Acceptance, Withdrawal Order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit, … .

22. Likewise, Insuring Agreement E of each bond provides Webster with substantially similar coverage for loss resulting directly from:

[T]he Insured having, in good faith, for its own account or for the account of others,… acquired, sold, delivered, or given value, extended credit or assumed liability, on the faith of any original … Evidence of Debt … which … is altered … .

23. The Bonds also contain the following definitions or substantially similar definitions:

Acceptance means a Written draft which the drawee has, by signature thereon, engaged to honor as presented.

Evidence of Debt means a Written instrument, including a Negotiable Instrument, executed, or purportedly executed, by a customer of the Insured and held by the Insured which in the regular course of business is treated as evidencing the customer's debt to the Insured.

Forgery means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

Negotiable Instrument means a Written document, which:

1. is signed by the maker or drawer;

2. contains an unconditional promise or order to pay a sum certain in Money and no other promise, order, obligation or power given by the maker or drawer;

3. is payable on demand or at a definite time; and

4. is payable to order or bearer.

5

SHIPMAN & GOODWIN LLP® • COUNSELORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103-1919 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

Negotiable Instrument also means a counterfeit check or Substitute Check.

### Oxford Collection Agency

24. Oxford was a collection agency, engaged by its customers to collect upon delinquent debts that individual account debtors owed to such customers.

25. Oxford earned its fees in two ways: (i) for "net" customers, Oxford collected monies from the individual account debtors, deposited such monies into a separate trust account for the benefit of the customer and then remitted the collected monies, minus Oxford's fees, to the customer; and (ii) for "gross" customers, Oxford collected monies from the individual account debtors, deposited such monies into a separate trust account for the benefit of the customer, remitted all of the collected monies to the customer (either on a daily, weekly or monthly basis), and then billed to customer to recoup its fees.

### Webster's Loan to Oxford

26. On or about April 5, 2007, Webster and Oxford entered into a Commercial Loan Agreement whereby Webster agreed to make a revolving line of credit available to Oxford in the principal amount of up to One Million Five Hundred Thousand Dollars ($1,500,000) (as modified, the "Loan").

27. Over the course of the next three years, the Loan was modified four times, which resulted in the principal amount ultimately being increased to up to Eight Million Dollars ($8,000,000).

6

28. The Eight Million Dollar ($8,000,000) Loan was evidenced by two commercial revolving notes, in the principal amounts of up to Six Million Dollars ($6,000,000) and up to Two Million Dollars ($2,000,000) (the "Notes").

29. The Loan was secured by a first priority security interest in and to all assets of Oxford, including its accounts receivable.

30. The Notes set forth the mechanics of the Revolving Line of Credit, including the terms and conditions pursuant to which Webster was obligated to make advances to Oxford under the Notes.

31. Subject to the Notes' other terms and conditions, Webster was obligated to make an advance to Oxford under the Notes if there was sufficient availability in the Borrowing Base to cover such advance at the time it was requested.

32. Availability in the Borrowing Base was the outside limitation for advances under the Notes, and was determined by calculating the equation in the Borrowing Base, a defined term of the Notes.

33. Sufficient availability under the Notes existed only if the requested advance, together with the aggregate principal amount outstanding under the Notes, was less than or equal to the Borrowing Base, as calculated at the time of such advance.

34. The Borrowing Base for the $6,000,000 Note was the lesser of (a) $6,000,000 or (b) 85% of Oxford's Eligible Accounts Receivable (the "Eligible A/R").

SHIPMAN & GOODWIN LLP • COUNSELORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103-1919 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

35. The $6,000,000 Note defined Eligible A/R as "domestic accounts receivable from invoiced amounts other than from post-dated checks, receivable within 90 days of the original invoice date."

36. The Borrowing Base for the $2,000,000 Note was the lesser of (a) $2,000,000 or (b) the sum of (i) 60% of total Receipts expected on Post Dated Checks to be deposited over the next succeeding three (3) months following the date of the Borrowing Base Report, plus (ii) 50% of total Receipts expected on Post Dated Checks to be deposited during the period beginning on the date which is three (3) months following the date of the applicable Borrowing Base Report and ending on the date which is twelve (12) months after the date of the applicable Borrowing Base Report (the "Post Dated Checks").

37. The $2,000,000 Note defined Post Dated Checks as "an electronic debit authorized for a date subsequent, and/or a physical check postdated, in each case received by [Oxford]."

38. The $2,000,000 Note defined Receipts as "the sum of (i) cash collections to be retained by [Oxford] with respect to the Post Dated Checks related to the portfolio acquired from Lab Corp., and (ii) receivables on all other Post Dated Checks."

39. The $2,000,000 Note defined Lab Corp. as "Laboratory Corporation of America."

40. The Notes required Oxford to provide Webster with a Borrowing Base Report ("BBR") within 20 days after each month end and upon each request for an advance under the Note.

SHIPMAN & GOODWIN LLP® • COUNSELORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103-1919 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

41. The BBRs calculated the availability in the Borrowing Base as of a specified period of time. Each BBR (i) provided numbers for each variable of the Borrowing Base equation, (ii) calculated the Borrowing Base equation based on such numbers, (iii) stated whether there was sufficient availability in the Borrowing Base to permit the requested advance, and (iv) contained (a) a certification by Oxford that such numbers and such calculation were true and correct and (b) an acknowledgement by Oxford that Webster was relying on such certification in order to make the requested advance under the Notes.

42. The BBRs were an essential component of the Borrowing Base. The Borrowing Base would have no meaning without the calculations, statements and certifications in the BBRs. Accordingly, the BBRs were an integral component of the Borrowing Base, as defined in the Notes, and of the Notes themselves.

### Webster's Loss

43. Despite its certification that the information contained in the BBRs was "true and accurate", Oxford submitted BBRs that contained inaccurate and/or fraudulent statements.

44. By entering inaccurate and/or fraudulent information in the BBRs, Oxford altered the Borrowing Base and thus altered an essential term of the Notes.

45. Webster relied on these altered Notes and advanced Oxford an aggregate amount of approximately Six Million Dollars ($6,000,000) under the Notes.

SHIPMAN & GOODWIN LLP® • COUNSELORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103-1919 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

46. Oxford has failed to repay Webster the amounts advanced under the Notes and Webster has been injured in that amount.

47. Had Webster been aware of the alternations made to the Notes by Oxford, it would not have advanced the funds under the Notes and suffered the corresponding loss.

## BREACH OF CONTRACT

48. Insuring Agreement D of the Bonds provides coverage for loss resulting directly from:

> Forgery or alteration of, on, or in, any Negotiable Instrument (except Evidence of Debt or Substitute Check), Acceptance, Withdrawal Order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit, ... .

49. Webster has suffered a loss resulting directly from Oxford's alteration of the BBRs that are written receipts for the withdrawal of property.

50. Insuring Agreement E of the Bonds provides coverage for loss resulting directly from:

> [T]he Insured having, in good faith, for its own account or for the account of others,... acquired, sold, delivered, or given value, extended credit or assumed liability, on the faith of any original ... Evidence of Debt ... which is altered ... .

51. By entering inaccurate and/or fraudulent information in the BBRs, Oxford altered the Borrowing Base and thus altered the terms of the Notes.

SHIPMAN & GOODWIN LLP® • COUNSELORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103-1919 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

52.     Webster has suffered a loss resulting directly from Oxford's alteration of the BBRs and the Notes.

53.     Webster has satisfied all of its obligations under the Bonds.

54.     Despite having made proper demand to the Insurers for its losses, the Insurers have failed and/or refused to indemnify Webster for its losses and are in breach of the Bonds.

### PRAYER FOR RELIEF

WHEREFORE, Webster seeks as follows:

1.  An award of monetary damages;

2.  Statutory interest pursuant to Conn. Gen. Stat. § 37-3a, or as otherwise allowed by law; and

3.  All such further relief whether at law or in equity that the Court deems to be just and appropriate.

>                               PLAINTIFF,
>                               WEBSTER BANK, N.A.
>
>                               By _____
>                               Mark K. Ostrowski
>                               Michael G. Chase
>                               Shipman & Goodwin LLP
>                               One Constitution Plaza
>                               Hartford, CT 06103-1919
>                               Tel.: (860) 251-5000
>                               Fax: (860) 251-5218
>                               Its Attorneys

11

| | |
|---|---|
| RETURN DATE: MARCH 17, 2015 | SUPERIOR COURT |
| WEBSTER BANK, N.A. | JUDICIAL DISTRICT OF WATERBURY |
| v. | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; ST. PAUL MERCURY INSURANCE COMPANY | FEBRUARY 18, 2015 |

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand, exclusive of interest and costs, is greater than Fifteen Thousand ($15,000.00) dollars.

PLAINTIFF,
WEBSTER BANK, N.A.

By /s/ Mark K. Ostrowski
Mark K. Ostrowski
Michael G. Chase
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
Tel.: (860) 251-5000
Fax: (860) 251-5218
Its Attorneys

SHIPMAN & GOODWIN LLP® • COUNSELORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103-1919 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385