UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WEBSTER BANK, N.A., | : | |
| | : | |
|    Plaintiff, | : | CASE NO. 3:15-cv-00385 |
| | : | |
| v. | : | |
| | : | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA and ST. PAUL MERCURY INSURANCE COMPANY, | : | NOVEMBER 20, 2015 |
| | : | |
|    Defendants. | : | |

**RULING ON MOTION TO REMAND**

**I.   INTRODUCTION**

Plaintiff, Webster Bank, N.A., sued Defendants, Travelers Casualty and Surety Company of America and St. Paul Mercury Insurance Company, in Connecticut state court alleging that Defendants breached financial institution bonds by refusing to indemnify Plaintiff for losses sustained as a result of fraudulent conduct by one of its customers. Compl. ¶¶ 1-5, ECF No. 1-1. Defendants removed to this Court, and Plaintiff now moves to remand. For the reasons that follow, Plaintiff's motion is GRANTED.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

Defendants issued several financial institution bonds to Plaintiff's parent company. *Id.* ¶¶ 10-19. Plaintiff is an insured under the bonds. *Id.* Each bond contains multiple insuring agreements. *Id.* ¶ 20. Under one of the insuring agreements, Defendants agreed to indemnify Plaintiff for loss resulting directly from forgery or alteration of certain documents. *Id.* ¶¶ 20-21.

One of Plaintiff's customers falsified certain documents. *Id.* ¶ 43-44. Relying on those documents, Plaintiff advanced the customer approximately six million dollars. *Id.* ¶ 45. The

1

customer did not repay the advance.  *Id.* ¶ 46.  As a result, Plaintiff suffered a loss.  *Id.* ¶ 52.  Defendants refused to indemnify Plaintiff for that loss.  *Id.* ¶ 54.  Plaintiff sued Defendants in state court claiming breach of contract under state law.  *Id.* at 1, 10.

Defendants removed to this Court, claiming that subject matter jurisdiction exists under 28 U.S.C. § 1352 because this is an action on a bond executed under federal law.[1]  Notice of Removal at 3-5, ECF No. 1.  Plaintiff moves to remand, contending that jurisdiction does not exist under section 1352.  Pl.'s Mem. at 6-14, ECF No. 15-1.

## III.   DISCUSSION

### A.   Standard of Review

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.  It is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As a result, the party opposing a motion to remand bears the burden of showing that the requirements for removal are satisfied.  *California Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) ("'[T]he defendant bears the burden of demonstrating the propriety of removal'") (quoting *Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir. 1994)); *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) ("[T]he party asserting jurisdiction bears the burden of proving that the case is properly in federal court");

---

[1] It appears that Defendants also claimed in their Notice of Removal that subject matter jurisdiction exists under 28 U.S.C. § 1331 on the ground that Plaintiff is a nationally-chartered bank.  *See* Notice of Removal at 2, ECF No. 1 ("Grounds For Removal . . . This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Specifically, Webster alleges that it is a national association organized under the laws of the United States."). Defendants maintain in their opposition brief, however, that this reference to section 1331 was not intended to be an independent claim of jurisdiction, but rather was intended to show that Plaintiff, as a nationally-chartered bank, was required by federal law to obtain fidelity coverage.  Defs.' Opp. at 2 n. 4, ECF No. 18.  Accordingly, the Court will not address whether subject matter jurisdiction exists under section 1331 on the basis of Plaintiff's national charter.

2

*Chien v. Commonwealth Biotechs., Inc.*, No. 3:12-cv-1378 (AWT), 2013 WL 2319331, at *2 (D. Conn. May 28, 2013) ("The party opposing a motion to remand bears the burden of showing that the requirements for removal have been met").

In light of Congressional intent to restrict federal court jurisdiction, "federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). Accordingly, "[o]n a motion to remand, the court construes all factual allegations in favor of the party seeking the remand." *One Sylvan Rd. N. Assocs. v. Lark Int'l, Ltd.*, 889 F. Supp. 60, 62 (D. Conn. 1995).

### B. Removal

The removal statute permits removal of civil actions "of which the district courts of the United States have original jurisdiction . . . ." 28 U.S.C. § 1441(a). "Put another way, '[o]nly state-court actions that *originally could have been filed in federal court* may be removed to federal court by the defendant.'" *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 276 (2d Cir. 2005) (emphasis in original) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Defendants, who bear the burden of showing that removal is proper, maintain that this case originally could have been filed in federal court because it is an action on a bond required by federal law, and therefore 28 U.S.C. § 1352 gives this Court original jurisdiction. That statute provides that "[t]he district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States . . . ." 28 U.S.C. § 1352.

There are two requirements for an action to fall within the ambit of section 1352.

First, the action must be "on a bond." *Id.* ("The district courts shall have original jurisdiction . . . of any action on a bond . . . ."). An action about a bond is not an action "on a

bond." *See Rader v. Mfrs. Cas. Ins. Co. of Phila.*, 242 F.2d 419, 427 (2d Cir. 1957) (case concerning indemnity agreement associated with a bond was not an action "on a bond"); *U.S. v. Arnaiz*, 842 F.2d 217, 221 (9th Cir. 1988) (suit to recover premium paid on bail bond "involve[d] an inquiry into the contractual obligations" of the parties and was not an action "on a bond"); *Mudd v. Teague*, 220 F.2d 162, 164 (8th Cir. 1955) (suit to recover possession of savings bonds was not an action "on a bond"); *Peerless Ins. Co. v. United States*, 674 F. Supp. 1202, 1205 (E.D. Va. 1987) ("A declaratory judgment action is not an action 'on a bond' but rather an action about a bond."); *American Casualty Co. of Reading, PA v. Heartland By–Products, Inc.*, No. 02 Civ. 4701 (PKL), 2003 WL 740866, at *2 (S.D.N.Y. Mar. 4, 2003) (case involving indemnification agreement associated with a bond was not an action "on a bond").

Second, the bond must be required by federal law. *See* 28 U.S.C. § 1352 ("[t]he district courts shall have original jurisdiction . . . of any action on a bond *executed under any law of the United States* . . . .") (emphasis added); *e.g.*, *Rader*, 242 F.2d at 427 (jurisdiction did not exist under section 1352 because "[n]one of [the agreements at issue] were required to be executed by any law of the United States . . . ."); *Fifth Third Bank v. Progressive Cas. Ins. Co.*, No. 3:11-cv-144-RJC-DSC, 2011 WL 5037178, at *2 (W.D.N.C. Oct. 24, 2011) (noting that "it remains true that section 1352 is only satisfied where a bond is required by federal statute or regulation having the force of law" and collecting cases); *Monticello Banking Co. v. Everest Nat'l Ins. Co.*, No. 13-17-GFVT, 2013 WL 5411102, at *8 (E.D. Ky. Sept. 26, 2013) (jurisdiction did not exist under section 1352 because FDIC manual requiring coverage was "not a law of the United States").

This action does not fall within the ambit of section 1352 because the insuring agreement that Plaintiff seeks to enforce is not required by federal law.

4

Defendants argue that Plaintiff was required to obtain the financial institution bonds by 12 C.F.R. § 7.2013, a regulation promulgated by the Office of the Comptroller of the Currency, which is an independent bureau of the U.S. Department of Treasury that charters, regulates, and supervises national banks and federal savings associations. *About the OCC*, http://www.occ.gov/about/what-we-do/mission/index-about.html (last visited Nov. 6, 2015). The regulation is considered a "law of the United States" for purposes of section 1352. *See Fifth Third Bank*, 2011 WL 5037178, at *2 (noting that "[c]ourts have interpreted section 1352 to grant jurisdiction where a 'bond has been required by regulations having the force of law'" and collecting cases) (quoting *U.S. for Use & Benefit of Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1495 (10th Cir. 1995)); 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3572 (3d ed. 2015) ("Government regulations have the force of law, so a bond required by regulations, rather than directly by statute, falls within this jurisdictional grant of § 1352").

The regulation provides:

> § 7.2013 Fidelity bonds covering officers and employees.
>
> (a) Adequate coverage.  All officers and employees of a national bank must have adequate fidelity coverage.  The failure of directors to require bonds with adequate sureties and in sufficient amount may make the directors liable for any losses that the bank sustains because of the absence of such bonds.  Directors should not serve as sureties on such bonds.

12 C.F.R. § 7.2013.

Thus, federal law required Plaintiff to "have adequate fidelity coverage." *Id.* Fidelity coverage is generally obtained through fidelity bonds, which are, in fact, a form of insurance. *E.g.*, *F.D.I.C. v. Ins. Co. of N. Am.*, 105 F.3d 778, 785 (1st Cir. 1997) ("Fidelity bonds are a sort of 'honesty insurance[]'"); *Tri City Nat'l Bank v. Fed. Ins. Co.*, 674 N.W.2d 617, 622 (Wis.

5

2003) ("[A] fidelity bond is a form of insurance."); 11 Steven Plitt et al., *Couch on Insurance* § 167:43 (3d ed. 2015) ("As fidelity bonds, financial institution bonds are in fact a form of insurance."). Thus, courts and texts sometimes use interchangeably the terms "fidelity coverage," "fidelity bond," and "fidelity insurance." *See, e.g.*, *Seaway Cmty. Bank v. Progressive Cas. Ins. Co.*, 531 F. App'x 648, 652 (6th Cir. 2013) (Donald, J., dissenting) ("A fidelity insurance bond, however, is not a typical insurance policy."); *Patrick v. St. Paul Fire & Marine Ins.*, No. Civ. 1:99-cv-314, 2001 WL 828251, at *3 (D. Vt. Feb. 15, 2001) ("A fidelity bond is an indemnity insurance contract") (quoting *Kami Kountry Broad., Co. v. U.S. Fid. & Guar. Co.*, 208 N.W.2d 254, 256 (Neb. 1973)); 1 Steven Plitt et al., *Couch on Insurance* § 1:16 (3d ed. 2015) ("[C]ourts generally use the terms 'fidelity bond' and 'fidelity insurance' without intending to differentiate one from the other"); Hugh E. Reynolds, Jr. & James Dimos, *Fidelity Bonds and the Restatement*, 34 Wm. & Mary L. Rev. 1249, 1249 n.1 (1993) ("For the purposes of this paper, the terms 'fidelity bonds,' 'fidelity coverages,' 'fidelity insurance,' and 'instruments of fidelity' refer to one or more of a variety of contracts . . . .").

Despite the varying terminology, courts agree that fidelity coverage indemnifies loss caused by employee dishonesty. *E.g.*, *First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.*, 688 F.3d 265, 279 (6th Cir. 2012) ("[F]idelity coverage concerns only the fidelity of the *employee* to the *employer*.") (emphasis in original); *St. Paul Mercury Ins. Co. v. M & T Bank Corp.*, No. 12 Civ. 6322 (JFK), 2014 WL 641438, at *1 (S.D.N.Y. Feb. 19, 2014) (fidelity coverage "protects a firm and its capital against losses caused by employee dishonesty or malfeasance."); *Tri City Nat'l Bank*, 674 N.W.2d at 620 ("Fidelity bonds insure an employer against employee infidelity."); *Aetna Cas. & Sur. Co. v. Kidder, Peabody & Co. Inc.*, 676 N.Y.S.2d 559, 564 (1998) (surveying history of fidelity coverage and noting that "fidelity

bonding covers the loss of property owned by the insureds or held by the insureds, as a consequence of employee dishonesty").

Relevant texts confirm that fidelity coverage indemnifies only losses caused by employee dishonesty. *E.g.*, 9af-221f *Appleman on Insurance* § 5661 ("It has been judicially stated that fidelity insurance is an agreement to indemnify another against a loss from want of honesty or fidelity of employees."); CharCretia V. Di Bartolo, *Who's the Boss? The Impact of Professional Employer Organizations on Fidelity Coverage*, 8 Fidelity L.J. 75, 78 (2002) ("'[T]he essence of employee fidelity coverage is the existence of an employer-employee relationship between the insured and the alleged defalcator. In the absence of such a relationship, . . . , no fidelity coverage exists.'") (quoting Carol A. Pisano, *The Outsourcer's Apprentice: Employee or Illusion*, 26 THE BRIEF 12, 13 (1997)); John K. Villa, *Bank Directors', Officers', and Lawyers' Civil Liabilities* § 4.04 (2015) ("Fidelity insurance provides the bank with indemnity against loss caused by a lack of honesty on the part of a bank's employees."); Bogda M.B. Clarke et al., *Fraud In The Inducement As A Defense To Fidelity And Surety Claims*, 42 Tort Trial & Ins. Prac. L.J. 181, 192 (2006) ("Fidelity insurance is issued to protect the insured against the perfidy of its employees.").

That 12 C.F.R. § 7.2013 requires only coverage for employee dishonesty is evidenced by its terms. Its heading references fidelity bonds "covering officers and employees," and it requires that "officers and employees of a national bank must have adequate fidelity coverage." 12 C.F.R. § 7.2013; *cf.* 9af-221f *Appleman on Insurance* § 5661 ("In a fidelity bond, the principal is the dishonest employee, and the obligee is the employer."). If the regulation required banks to have coverage for losses caused by third parties, it would not specify "officers and employees." Indeed, one source cites 12 C.F.R. § 7.2013 for the proposition that "[n]ational

banks are strongly urged, and federally insured savings and loan institutions are required, to maintain insurance protection against employee dishonesty." John K. Villa, *Bank Directors', Officers', and Lawyers' Civil Liabilities* § 5.02 (2015) (citing 12 C.F.R. § 7.2013).

The financial institution bonds at issue are modeled after the Surety & Fidelity Association of America's Standard Form No. 24, *see* ECF No. 18-1 at 7, which is often referred to as a "blanket" bond, and which combines various coverages, including fidelity coverage, *see* 11 Steven Plitt et al., *Couch on Insurance* § 167:43 (3d ed. 2015). Thus, fidelity coverage is merely one of several coverages contained within a standard financial institution bond. *See id.* § 1:16 ("Fidelity protection is often given by 'blanket' policies, as merely one of several coverages provided to the insured."); Hugh E. Reynolds, Jr. & James Dimos, *Fidelity Bonds and the Restatement*, 34 Wm. & Mary L. Rev. 1249, 1250 (1993) ("Many contracts with fidelity coverage are, in fact, insurance policies. These policies provide a variety of coverages to the insured of which the fidelity coverage is only a part.").

Coverage for forgery or alteration is another coverage contained within a standard financial institution bond. *See id.* at 1262 ("The current Form No. 24 financial institution bond is clearly an insurance policy. The individual coverages are captioned "Insuring Agreements" and consist of: "Fidelity" coverage (Insuring Agreement A), which is designed to cover dishonest acts of employees as defined in the coverage; . . . "Forgery or Alteration" coverage (Insuring Agreement D), which covers losses resulting from forgery or alteration as defined in the coverage . . . ."); *Aetna Cas. & Sur. Co.*, 676 N.Y.S.2d at 562 ("The bonds then specify six areas of coverage: fidelity, losses caused by dishonest or fraudulent acts of an employee of the assured; . . . forgery or losses by the insureds resulting from alterations . . . .").

To be sure, the financial institution bonds at issue satisfy Plaintiff's obligation under 12 C.F.R. § 7.2013 to obtain fidelity coverage. Insuring Agreement A of the bonds, labeled "FIDELITY", provides coverage for "Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others." ECF No. 18-1 at 9. In contrast, the insuring agreement at issue here, Insuring Agreement D, is labeled "FORGERY OR ALTERATION" and provides coverage for "Loss resulting directly from . . . Forgery or alteration of" certain documents. *Id.* Insuring Agreement D does not provide fidelity coverage because it does not indemnify loss caused by employee dishonesty; it indemnifies loss caused by third parties, such as a customer. Because Insuring Agreement D is not fidelity coverage, it is not required by 12 C.F.R. § 7.2013.

Defendants, who bear the burden of showing that removal is proper, otherwise have not directed the Court to any federal law requiring Plaintiff to obtain the forgery or alteration coverage on which Plaintiff sues. Thus, Plaintiff has not carried its burden to show that this is an action on a bond required by federal law.

Defendants argue that, even if the financial institution bonds contain "some coverages that were not required by the OCC regulation, that does not mean the Bond was not purchased to comply with federal law. . . . The fact that the Bond contains multiple coverages, in addition to employee fidelity, does not change the fact that the Bond meets the requirements of the OCC and that this is an action on a bond executed under a law of the United States." Defs.' Opp. at 6, ECF No. 18. Defendants' argument appears to be that, an action to enforce an agreement that is not required by federal law is an action on a bond required by federal law, so long as that provision is contained within a financial institution bond or other instrument containing an agreement that is required by federal law.

9

The Court disagrees.  The regulation at issue required Plaintiff to obtain fidelity coverage, not a financial institution bond.  If the forgery or alteration insuring agreement in this case were contained in a separate document, Defendants' argument plainly would fail.  Section 1352 jurisdiction does not rise and fall on the basis of such formal distinctions.  The case law is clear that, to fall within the ambit of section 1352, an action must be on a bond required by federal law.  An action on a bond not required by federal law does not become an action on a bond required by federal law simply because the optional bond is contained within the same document as a federally-required bond.

Because there is no jurisdiction under section 1352, and because there is no other ground for subject matter jurisdiction, this case must be remanded.  28 U.S.C. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (ECF No. 15) is GRANTED.  This action shall be remanded to the Connecticut Superior Court for the Judicial District of Waterbury.  The Clerk is directed to close this case.


SO ORDERED at Bridgeport, Connecticut this twentieth day of November, 2015.


      /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE